IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANTHEMENA WALKER**                                             **PLAINTIFF**

v.                                                                       NO. 3:23-cv-3101-CWR-FKB

**SMITH COUNTY SCHOOL DISTRICT**                       **DEFENDANT**
**(JURY TRIAL DEMANDED)**

## COMPLAINT

In Taylorsville schools, students used the "n-word" with impunity. Administration also criticized the only Black teacher - Ms. Walker - for wearing her hair in a traditional African wrap. Thereafter, Ms. Walker had a severe anxiety attack and needed two days of medical leave. Administration denied her request. She emailed the Superintendent that this was unlawful. The district then fired her for "excessive absences" - though she had taken fewer than ten total days of leave that year. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

## PARTIES

1. Plaintiff Anthemena Walker is an adult resident of Mississippi.

2. Ms. Walker is Black.

3. Ms. Walker is disabled, has a record of disability, and/or is regarded as disabled as defined in the Americans with Disabilities Act.

4. Defendant Smith County School District (SCSD) is the public school system for Smith County.

5. Defendant is a local subdivision of government, and is not an "arm of the state" for Eleventh Amendment purposes.

6. Defendant has more than fifteen employees.

7. On information and belief, Defendant has more than 100 employees.

8. On information and belief, Defendant has more than 200 employees.

9. On information and belief, Defendant has more than 500 employees.

10. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

11. Plaintiff was an employee of the Defendant.

12. Plaintiff worked at the Taylorsville Attendance Center located at 324 Hester Street, Taylorsville, Mississippi 39168.

13. During her time working for Defendant, Plaintiff was covered by Title VII, the ADA, and the FMLA.

### JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

14. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.

15. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because all work at issue was located in and around Smith County, Mississippi.

16. As described in greater detail below, Plaintiff claims to have experienced a course of alleged harassment based on race and disability, protected activity and retaliation which allegedly led to receipt of a termination letter on May 23, 2022.

17. The claims in this matter accrued for statute of limitations purposes no earlier than May 23, 2022.

18. Ms. Walker made an initial inquiry with the Equal Employment Opportunity Commission on or about May 31, 2022.

19. On July 14, 2022, Ms. Walker filed a perfected charge with the EEOC, Charge No. 423-2022-01104. Exhibit 1 (EEOC Charge).

20. This charge and the subsequent investigation by the EEOC concerned the issues addressed in this lawsuit.

21. This charge was filed within 180 days of the alleged violations.

22. On November 8, 2023, Ms. Walker received a notice of right to sue from the EEOC. Exhibit 9 (Right to Sue)

23. Ms. Walker filed this lawsuit within 90 days of receipt of this notice of right to sue.

24. Ms. Walker has timely and fully exhausted her administrative remedies and brought this lawsuit.

25. Plaintiff demands a trial by jury on all issues so triable.

FACTS

26. Ms. Walker worked as a licensed educator.

27. Ms. Walker has a license to teach and is fully qualified and able to perform the functions of her job as a teacher for the Defendant.

28. Ms. Walker has obsessive-compulsive disorder (OCD), anxiety, depression, hypertension and a number of other medical conditions.

29. These conditions substantially interfere with Ms. Walker's ability to, among other things, think and concentrate. These conditions also substantially interfere with neurological and brain functions.

30. Ms. Walker got a hysterectomy in 2021, before the 2021-2022 school year started.

31. These and related conditions are disabilities as defined by the ADA.

32. Throughout the 2021-2022 school year, Ms. Walker has been the subject of a racially hostile work environment.

33. Ms. Walker wore a wrap in her hair in honor of Black History Month in February 2022.

34. On or about February 2, 2023, the administration told Ms. Walker that the administration had "complaints" about the hair wrap. Exhibit 2

35. Administration told Ms. Walker the wrap was against dress code.

36. The wrap was not against the dress code.

37. A certain student or students at Taylorsville Attendance Center used the "n-word" during the 2021-2022 school year.

38. Administration was aware of this use of this racial slur by the student(s).

39. The use of this racial slur was - on at least one occassion - captured on a recording.

40. The administration was aware of this recording.

41. Ms. Walker did not make this recording.

42. Rather than focusing on the racially-charged misconduct of the student, attention was turned to the recording itself.

43. Because of Ms. Walker's race, parents assumed that Ms. Walker made the recording and falsely accused her.

44. The administration assumed Ms. Walker made the recording.

45. Ms. Walker has been targeted by parents because of her race.

46. The District has done nothing to prevent or remedy the racially motivated harassment by parents.

47. The administration assigned Ms. Walker "problem students" to supervise during what should have been her planning period.

48. White teachers were not treated in this way.

49. In Spring 2022, Ms. Walker's contract was renewed for the following school year, 2022-2023.

50. In the early afternoon on Wednesday, May 18, 2022, Ms. Walker asked to take a half day on Thursday and a whole day Friday to help her parents.

51. This request was denied by Ms. Walker's immediate supervisor, Assistant Principal Dr. Elcia Firle.

52. Later that day, May 18, 2022, Ms. Walker had a severe panic attack.

53. Panic attacks are symptoms of Ms. Walker's OCD and anxiety.

54. Ms. Walker went to the doctor to address her panic attack.

55. Ms. Walker sought treatment from Dr. Thomas N. Hudson.

56. Ms. Walker's doctor took Ms. Walker off of work from Wednesday, May 18, 2022, to return Monday, May 23, 2022. (Exhibit 3)

57. Ms. Walker provided the doctor's note to that effect to Dr. Firle.

58. This doctor's note informed Dr. Firle that Ms. Walker had a medical condition that prevented her from working those days.

59. With this communication, Ms. Walker requested the reasonable accommodation of a short and definite medical leave of two school days.

60. This request was protected activity under the ADA.

61. This request was reasonable.

62. It would have imposed no undue burden on the school to grant this request.

63. Early in the morning, on Thursday, May 19, 2022, Dr. Firle texted Ms. Walker and told her to report to work that day. Exhibit 4

64. By this text, Dr. Firle was denying Ms. Walker's request for a reasonable accommodation.

65. Dr. Firle never engaged Ms. Walker in an interactive process to determine if SCSD could accommodate her disabilities in this situation.

66. Ms. Walker responded to Dr. Firle and reminded her that Ms. Walker was medically unable to work that day. Ms. Walker also asked for the contact information for SCSD's human resources department.

67. Later that day, on Thursday, May 19, Ms. Walker emailed Dr. Firle. Ms. Walker carbon copied superintendent Nick Hillman, principal Mike Moore, curriculum coordinator Julie Guthrie, curriculum director Angela Harris. In this email, Ms. Walker explained Dr. Firle's response to her medical condition. Ms. Walker explained that Dr. Firle's conduct concerning her medical condition amounted to intimidation and harassment and created a hostile work environment. Exhibit 5.

68. Ms. Walker specifically wrote, "Please all parties involved hear my formal complaint regarding the intimidation and harassment in this hostile work environment."

69. This email was opposition to Dr. Firle's disability discrimination and protected activity under the ADA.

70. Ms. Walker returned to work on Monday, May 23, 2022.

71. As Ms. Walker was arriving, Dr. Firle shouted at her.

72. Dr. Firle said she wanted to meet with Ms. Walker that morning.

73. After this interaction, Ms. Walker emailed Dr. Firle and carbon copied Mr. Hillman, Mr. Moore, Ms. Guthrie, and Ms. Harris. In this email, Ms. Walker asked Dr. Firle who else would be in the meeting she was requesting. Ms. Walker specifically wrote: "I do not feel comfortable meeting with you alone in this hostile work environment." Exh 5.

74. Later that day, Ms. Walker was called into a meeting with Dr. Firle.

75. Mr. Moore was also in this meeting.

76. In this meeting, Mr. Moore said, "We got your email about a hostile work environment, and we don't do that here," or words to that effect.

77. Mr. Moore then handed Ms. Walker a termination letter. Exhibit 6.

78. Mr. Moore asked if Ms. Walker would resign in lieu of termination.

79. Ms. Walker declined to resign.

80. The termination letter says that Ms. Walker was terminated for "insubordination, neglect of duty, and other good cause." The letter further states: "your communication with your supervising principal are unprofessional and disrespectful; you have excessive absences; and you have failed to foster a healthy and productive relationship with parents."

81. These reasons are false, pretextual and/or unlawful.

82. The references to "insubordination" and "communication" are references to her opposition to Dr. Firle's disability discrimination.

83. The references to "neglect of duty" and "excessive absences" are references to her medical absence.

84. District policy provides ten paid sick days per year.

85. Ms. Walker had missed fewer than ten working days that school year. Exh. 7

86. Other teachers were permitted to take more days off than Ms. Walker that school year.

87. Teachers who had no known disability took equal or more days off in the 2021-2022 school year.

88. White teachers took equal or more days off in the 2021-2022 school year.

89. Ms. Walker requested a hearing from the District about her termination.

90. On June 3, 2022, the District set the hearing for June 20, 2022 - which is the federal holiday for Juneteenth, a celebration of the end of Black slavery in America. Exhibit 8.

91. It was rescheduled when Ms. Walker's counsel pointed this out and requested a new date.

92. Meanwhile Ms. Walker began looking for other work for the following school year.

93. She received job offers.

94. However, the Defendant maintained that, in light of her pending appeal, she was still technically under contract for the next school year with them.

95. But the Defendant did not offer to rescind the termination and bring her back to work the next year.

96. Thus, as the new school year approached, Ms. Walker was not expected back teaching in Taylorsville, but remained blocked from securing a job with another district.

97. In order to mitigate the harm suffered as a result of her termination, Ms. Walker had no choice but to resign her appeal at Taylorsville so she could get a guaranteed contract elsewhere.

## CAUSES OF ACTION

### COUNT I: RACIAL DISCRIMINATION UNDER TITLE VII & 42 USC 1981

98. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

99. Under the Civil Rights Acts of 1866 and 1964, as amended, it is unlawful to discriminate against an employee based on that employee's race.

100. Here, SCSD discriminated against Ms. Walker based on her race when she was fired.

101. With this discrimination, SCSD violated the law.

102. In doing so, SCSD harmed Ms. Walker.

COUNT II: RACIAL HARASSMENT UNDER TITLE VII & 42 USC 1981

103. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

104. Under the Civil Rights Acts of 1866 and 1964, as amended, it is unlawful for SCSD to require an employee to work in a hostile work environment based on that employee's race.

105. Here, Ms. Walker was working in a racially hostile work environment based on her race.

106. SCSD failed to take prompt remedial action to cure the harassment.

107. With this harassment, SCSD violated the law.

108. In doing so, SCSD harmed Ms. Walker.

COUNT III: DISABILITY ACCOMMODATION UNDER THE ADA & REHAB ACT.

109. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

110. Under the ADA and Section 504 of the Rehabilitation Act, it is unlawful for SCSD to discriminate against an employee because of that employee's disability. This includes failing to provide reasonable accommodations.

111. Here, Ms. Walker's medical conditions were an "actual disability" under the ADA and Rehab Act.

112. SCSD discriminated against Ms. Walker by failing to accommodate her and by failing to engage in the interactive process.

113. With this discrimination, SCSD violated the law.

114. In doing so, SCSD harmed Ms. Ramirez.

COUNT IV: DISABILITY DISCRIMINATION UNDER THE ADA & REHAB ACT.

115. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

116. Under the ADA and Section 504 of the Rehabilitation Act, it is unlawful for SCSD to discriminate against an employee because of that employee's disability.

117. Here, Ms. Walker's medical conditions were an "actual disability" under the ADA and Rehab Act.

118. Alternatively, Ms. Walker's medical conditions were a "record of" disability under the ADA and Rehab Act.

119. Alternatively, Ms. Walker was "regarded as" disabled by SCSD as defined under the ADA.

120. SCSD discriminated against Ms. Walker by firing her.

121. With this discrimination, SCSD violated the law.

122. In doing so, SCSD harmed Ms. Ramirez.

COUNT V: DISABILITY HARASSMENT UNDER THE ADA & REHAB ACT.

123. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

124. Under the ADA and Section 504 of the Rehabilitation Act, it is unlawful for SCSD to discriminate against an employee because of that employee's disability.

125. Here, Ms. Walker's medical conditions were an "actual disability" under the ADA and Rehab Act.

126. Alternatively, Ms. Walker's medical conditions were a "record of" disability under the ADA and Rehab Act.

127. Alternatively, Ms. Walker was "regarded as" disabled by SCSD as defined under the ADA.

128. SCSD discriminated against Ms. Walker by harassing her.

129. With this discrimination, SCSD violated the law.

130. In doing so, SCSD harmed Ms. Ramirez.

COUNT VI: RETALIATION

131. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

132. Under Title VII, 1981, ADA, and Rehab Act it is unlawful for SCSD to retaliate against an employee for engaging in protected activity, including requesting accommodations and opposing discrimination.

133. Here, Ms. Walker requested reasonable accommodations.

134. This was protected activity.

135. Ms. Walker opposed what she believed was discrimination.

136. This was protected activity.

137. Ms. Walker was fired because of her protected activity.

138. Through this retaliation, SCSD violated the law.

139. In doing so, SCSD harmed Ms. Walker.

## REMEDIES

140. Plaintiff seeks all remedies available, including but not limited to the following:

    a. Back pay;

    b. Reinstatement and/or front pay, as appropriate;

    c. Liquidated damages;

    d. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

    e. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

    f. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

    g. Nominal damages if no other damages are available for any reason;

    h. Pre- and post-judgment interest;

i. Attorney fees;

j. Costs;

k. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

l. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

m. Any other equitable relief as this honorable Court deems appropriate.

n. A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and/or,

o. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on November 17, 2023,

ANTHEMENA WALKER

/s/ Joel Dillard                ,
Joel Dillard (MSB # 104202)
JOEL F. DILLARD, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372, ext. 2
joel@joeldillard.com